IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-041 |
| | ) | |
| JERMAINE WHITE, Warden; | ) | |
| DONTAVIOUS TILLMAN, CERT Officer; | ) | |
| ANNTOINETTE JOHNSON, Chief | ) | |
| Counselor; VERONICA STEWART, Deputy | ) | |
| Warden of Security; and SGT. BROWN, | ) | |
| CERT Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.  **SCREENING THE AMENDED COMPLAINT**

   A.  **BACKGROUND**

Plaintiff names the following Defendants: (1) Jermaine White, TSP Warden, (2) Veronica Stewart, TSP Deputy Warden of Security, (3) Anntoinette Johnson, TSP Chief Counselor, (4) Dontavious Tillman, TSP CERT Officer, and (5) Sgt. Brown, TSP CERT Officer.

(Doc. no. 9, pp. 1-4.)  Plaintiff sues Defendants in their individual and official capacities.  (Id. at 2-4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On November 19, 2022, Plaintiff discovered his prison file incorrectly identified him as a gang member.  (Id. at 5.)  Plaintiff informed Defendant Brown of the error and that he feared for his life because of the misclassification.  (Id.)  Prison officials moved Plaintiff to a different dormitory, and a counselor, who is not named as a Defendant, told Plaintiff to complete a classification appeal form regarding the gang classification.  (Id. at 6.)  Plaintiff's dormitory assignment was changed two more times, but on December 13, 2022, he was sexually harassed and robbed of his property.  (Id.)  No security check was performed on December 13th, so Plaintiff had to sleep in the day room and was "written up" for refusing housing when he reported the harassment and robbery.  (Id.)

Plaintiff wrote a letter to Defendants White and Stewart about the events of December 13th and explained that he needed to be reassigned to a different prison because he feared for his life, but they did not acknowledge his communication.  (Id.)  When Plaintiff was released from "the hole" for refusing housing, he was assigned to the same dormitory where he had been harassed and robbed on December 13th.  (Id. at 7.)  Plaintiff told Defendant Tillman on March 3, 2023, he feared for his life because of the prior incident, but Defendant Tillman stated Plaintiff was not moving.  (Id.)  Later that night, eight inmates assaulted Plaintiff, resulting in Plaintiff receiving black eyes and a bruised face and ribs.  (Id.)

Plaintiff's grievances about the incidents were denied, no prison officials or P.R.E.A. investigators came to speak with him immediately after the December 13th incident, and Defendant Brown did not conduct an investigation regarding the incidents until April or May of

2

2023. (Id. at 6-7.) Defendants White and Stewart did not respond to Plaintiff's letter explaining he was not a gang member and feared for his life, and Defendant Johnson refused to help Plaintiff because she doubted Plaintiff's claims when she saw him talking to other inmates.[1] (Id.) As relief, Plaintiff seeks 2.5 million dollars in damages, mental health assistance, and an investigation into TSP and its staff regarding the lack of security. (Id. at 9.)

### B.     DISCUSSION

#### 1.  Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1]Plaintiff alleges "Chief Counselor Brown" refused to help him. (Doc. no. 9, p. 7.) Based on the titles in the caption of the Complaint and the other allegations regarding Sgt. Brown, a male CERT Officer, the Court presumes Plaintiff's reference here to Defendant Brown - rather than Defendant Johnson, a female - is a scrivener's error.

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Does Not State a Failure to Protect Claim Against Any Defendant

A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a threat to an inmate's health and safety, the

Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*).  However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012; see also Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" (citation omitted)).  "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

The three elements of a failure-to-protect claim include:  (1) incarceration under conditions posing a substantial risk of harm; (2) the defendants had a sufficiently culpable state of mind; and (3) causation, e.g., demonstrating the constitutional violation caused an injury. Cox v. Nobles, 15 F.4th 1350, 1357-58 (11th Cir. 2021).  The second element, deliberate indifference, occurs when a prison official "knows of and disregards an excessive risk to innate health or safety." Id. at 1358.  Thus, Plaintiff must allege a Defendant "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that a Defendant "dr[ew] the inference." Id. (citation omitted).

The three elements of a failure-to-protect claim are evaluated in part by an objective standard and in part by a subjective standard. See Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (*per curiam*). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal citations and quotations omitted). Thus, mere negligent failure to protect an inmate from an attack does not justify § 1983 liability. Brown, 894 F.2d at 1537. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff has not alleged any Defendant consciously disregarded a serious and imminent risk to Plaintiff. First, as to the December 13th incident, Plaintiff provides general details about the attack, but he does not explain how, or even if, each Defendant was made aware of a *specific* threat to attack Plaintiff prior to that date. At best, he states he informed Defendant Brown about a generalized fear of harm and that he had been misidentified as a

6

gang member.² Nor does Plaintiff allege any attack on him or threat made toward him prior to the December 13th assault.

As to the March 3rd incident, Plaintiff similarly fails to allege he alerted any Defendant to a *specific* threat of harm from any particular inmate. Plaintiff states that he told Defendant Tillman about a generalized fear of harm, but he did not identify any particularized threat. Plaintiff does not identify his harassers/attackers in either incident or otherwise suggest the same inmates were involved in the December 13th and March 3rd incidents. To the extent Plaintiff's allegations could be read to suggest inmates in the dormitory were known as problematic, general knowledge of a violent history is not sufficient. Cf. Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (*per curiam*) (requiring "much more than mere awareness" of an inmate's "generally problematic nature" to impose liability for failing to protect against attack). Moreover, although "[a]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm," and "confinement in a prison where violence and terror reign is actionable" Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014), Plaintiff does not describe any such circumstances prior to the December 13th or March 3rd incidents.

---

²To the extent Plaintiff suggests Defendant Brown may have violated a prison regulation by taking too long to investigate the reported harassment/attacks, an allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (*per curiam*) (finding district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Taylor v. White, Civ. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by*, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012).

Second, the Eleventh Circuit has noted "the Eighth Amendment does not require the uninterrupted personal supervision of all inmates." Estate of Owens v. GEO Group, Inc., 660 F. App'x 763, 773 (*per curiam*) (11th Cir. 2016) (citing Purcell v. Toombs Cnty., 400 F.3d 1313, 1323 n.23 (11th Cir. 2005) ("The Constitution does not require that every inmate in a jail be observed by a guard every twenty minutes."); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995) (evidence that jailer failed to check on group cell during hour between last check and beating was not sufficient to show deliberate indifference).) Thus, there is no claim to be had that Defendants are liable based on the supervision, or alleged lack thereof, in place at the time of the two incidents.

Third, Plaintiff cannot hold Defendants White, Stewart, or Johnson liable by virtue of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendants White, Stewart, or Johnson

8

liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name these individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions. Nowhere does Plaintiff allege these three were present for, or participated in, the substantive events about which Plaintiff complains: the December 13th and March 3rd incidents. Rather, he complains they did not act to prevent them.[3]

Therefore, Plaintiff must allege a causal connection between these Defendants and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"

---

[3]To the extent Plaintiff's allegations could be read as an attempt to impose liability based on receipt of a letter or a grievance concerning the incidents, he fails to state a claim. Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim a Defendant mishandled Plaintiff's grievance or improperly denied a grievance fails to state a claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); see also Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Nothing in his amended complaint indicates Defendants were responsible for a policy or custom resulting in a violation of Plaintiff's rights. At best, Plaintiff states he wrote a letter to the Warden and Deputy Warden, as well as told the Chief Counselor, about his generalized fears. Even then, he alleges he wrote one letter to Defendants White and Stewart, and spoke with Defendant Johnson, *after* the December 13th incident, but Plaintiff gives no indication he identified a specific threat that would put them on notice of a second attack. Any implicit suggestion that Defendants allowed or otherwise tacitly authorized the conduct of subordinates via customs and practices of allowing inmates to assault each other is insufficient because he offers no facts to support this conclusory assertion. See Anderson v. Hall, Civ. Act. No. 5:19-cv-6, 2020 WL 2896682, at *2 (S.D. Ga. May 29, 2020) (dismissing claim for liability of supervisory prison officials where no facts alleged in support of causal connection allegations), *adopted by*, 2020 WL 3406329 (S.D. Ga. June 19, 2020). Nor does Plaintiff allege any facts to show these supervisory Defendants either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner.

In sum, Plaintiff fails to state a failure-to-protect claim against any Defendant. There is no allegation that any Defendant was aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of harm and drew the inference of such. Nor has Plaintiff alleged any supervisory official actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation.

### 3. Official Capacity Monetary Damages

To the extent Plaintiff is suing Defendants in their official capacities, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

### 4. Any Potential State Law Negligence Claim Should Be Dismissed Without Prejudice

For the sake of completeness, the Court notes Plaintiff's multiple reference to "negligence" in the amended complaint. To the extent Plaintiff might have any viable state law negligence claim, it should be dismissed without prejudice so that Plaintiff may pursue it, if he so chooses, in state court. Federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." Id. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the

district court has dismissed all claims over which it has original jurisdiction. . . ." Id. § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has determined that the allegations serving as the basis for original federal court jurisdiction fail to state a claim upon which relief may be granted and should be dismissed. Thus, the Court must conclude the federal courts do not retain jurisdiction over any potential state law claim, and any such claim should be dismissed without prejudice. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well.").

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's case be **DISMISSED** for failure to state a claim upon which relief may be granted and **CLOSED**. The Court also **REPORTS** and **RECOMMENDS** any potential state law claims be **DISMISSED WITHOUT PREJUDICE**.

SO REPORTED and RECOMMENDED this 13th day of July, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA